Good morning. My name is Justin Bustos. I represent the appellant LeCharles Baldon. I would like to reserve about two minutes for rebuttal. This appeal was brought entirely to challenge the sentence that Mr. Baldon received. The appeal raises two sets of arguments. It challenges both the determination of the sentencing guidelines range and it challenges the substantive reasonableness of the sentence. For purposes of today's argument, I intend to focus my time on arguing the calculation of the guidelines range. So first, I will address the criminal history category. The district court erred by concluding that Mr. Baldon's prior conviction for California carjacking constituted a crime of violence. And the district court made that decision by relying on a modified categorical approach. On appeal, the government no longer contends that the modified categorical approach is appropriate for this conviction. Instead, the government relies entirely on the categorical approach, that it's categorically a crime of violence. So this court previously determined in the Solorio-Ruiz decision that California carjacking is not categorically a crime of violence. So really the threshold question for this court is, is the Solorio-Ruiz decision clearly irreconcilable with the Supreme Court's recent decision in Stokely? And it's not, and here's why. The Stokely court made it very clear that not all contact is sufficient force for purposes of the crime of violence determination. It made it clear that the mere snatching of property does not meet that force threshold. Now I would submit to the court that in California, carjacking can be accomplished by the same amount of force involved in mere snatching. And I have two examples to explain that argument to the court. First, I think the best case we cited for that proposition that demonstrates this is the People v. Lopez case, which was the Court of Appeals of California case. In that case, the sheriff deputy had a foot chase with the defendant. The deputy was about five to ten feet behind the defendant when the defendant got in the deputy's patrol car. The deputy came up to the car and lifted up the handle. He looked inside. At that point, the car drove off. There was no application of force at all to the officer in this case. And yet the California Court of Appeals found that that level of force was sufficient to maintain the crime of violence. Let's say we disagreed with you on the effect of the Supreme Court case and we were going to concentrate instead on your argument that this crime can be accomplished with physical force against the property of another, which in your view would disqualify it from being a crime of violence. Do you have real-world examples of people who are prosecuted in California for carjacking based on a threat of force against the property of another? Yes, Your Honor. I have one specific example, and I refer back to the Lopez case that I just described. In that case, when the court was analyzing the sufficiency of the evidence, the court noted that the jury could have concluded that the officer had a reasonable fear for the fate of his vehicle. But that was in addition to force against the person, correct? That's absolutely correct. The court concluded both problems were sufficient. So that's not an example of a case that just involved alleged force against the property of another? That is correct. It did not involve just force against the property of another. But when you read the court's reasoning in that decision, it also specifically noted that the fear of the fate of the vehicle alone would have been sufficient to maintain the conviction. Under the California statute, couldn't you have a case, although there isn't one I saw, couldn't you have a case where somebody says, give me the keys to your Ferrari because if you don't, I'm going to bang it up three different ways. And you could be convicted and you hand over the keys and away he goes. You could be convicted under the California statute for carjacking under that factual scenario, couldn't you? Yes, absolutely. I completely agree with that argument. And when you look at the California model jury instructions that's put out, it certainly sets that. Absolutely. And then I've also cited numerous examples of case law where trial courts have instructed the jury that way and where appellate courts have found sufficient evidence based on using that jury instruction. And so the same reasoning that applied in the Bankston case where the court found robbery was overbroad, I think would equally apply in the context of California carjacking. And then I guess the last point I should make on that is in the robbery context in the La Scala decision, the court did note that mere snatching of property was sufficient for robbery. And because California courts treat robbery and carjacking identically, and indeed the Court of Appeals has in fact said that in carjacking cases you look to the force involved with robbery cases that the amount of force is the same for both types of offenses and is categorically overbroad. Now I will move on to the argument that it was inappropriate to impose the two-level enhancement for the firearm. Now there are two potential firearms at issue in this case. There's the firearm that was found in the storage unit and there's also the firearm that was sold to the CHS. Now at the district court level, the government relied entirely on the firearm that was found in the storage room locker. And in fact the district court adopted that argument. When I was reviewing the excerpts of record to prepare for today's argument, I noticed that on page 69 of the excerpts of record, the district judge did note that it was the storage unit firearm that he relied upon for that. And I point that site out to the court because I don't believe it was contained in the briefing. That was 69 of the excerpts of record. So I'll briefly address each firearm. Why don't you concentrate on the storage unit firearm? I'll do that, Your Honor. So with respect to the storage unit firearm, our position is that Mr. Baldwin had mere access. But he admitted it was his storage unit. He did not admit that it was his storage unit. Well, I'm looking at page 7 of the pre-sentence report, ER 171, and it says in paragraph 25, on January 17, 2017, agents seized a firearm and various quantities of controlled substances from the defendant's storage unit. And the defendant counsel and the defendant admitted at sentencing they challenged none of the facts in this. And in the plea agreement, it says, where the defendant also agreed to the facts, on January 17, agents executed search warrants on Baldwin's residence and storage unit. So why aren't these two things definitive that it was his storage unit? Because in the plea agreement, it also specifically notes that the storage unit was rented in the name Angelique Baker. Yeah, but it says in the plea agreement it's his storage unit, and it says even more directly in the PSR that it's his storage unit. And the defendant agreed to the facts. Why isn't that the end of the argument? Again, because at least one other person had access to the storage unit. The government never presented evidence that Angelique Baker was a fictitious person, that she did not have access to it, that she didn't have any involvement with it. And so when you introduce a fact that possibly two people had access to this firearm, it's insufficient for constructive possession. But the guns were found in a bag of drugs, and there's no dispute that those drugs belong to the defendant, right? There's no dispute the drugs belong to my client. That's correct. The drugs were found near the gun. That's also correct. But we don't know. So Mr. Baldwin didn't have actual possession of the firearm. So you focus on constructive possession. Was the gun near the bag? Wasn't it inside the bag with the drugs? It was in a backpack, and the drugs were also in the backpack. That's correct. So, I mean, I don't understand factually why if it's the defendant's storage unit, and the defendant paid to extend the lease, the fact that some person who may or may not have been fictitious, his name was on the lease, why that prevents a factual finding that your client possessed the gun?  including clothes, cords, cameras. And to the extent another person had access to the storage unit, the gun could have belonged to that other person. I'll point to the Cesaris opinion, where the court says we cannot be left to speculate whether a firearm belonged to one defendant, a different defendant, or both. And here I submit, because Angelique Baker had the storage unit, that that person had access to the firearm, in addition to Mr. Baldwin. And we'll give you another minute in addition to your time. Thank you, Your Honor. Thank you. Thank you. Good morning, Your Honor. It's Nancy Olson, appearing for the United States. I'll start with questions regarding the threats to property. There are actually no real-world examples of cases in California that demonstrate a defendant being charged and convicted for committing a carjacking with merely threats to property. The one case that Mr. Baldwin's counsel cited was the Lopez case. But there are a couple of issues with that case. The first is, in the language of that decision, the Lopez court talks about the California legislature specifically enacting the carjacking statute as a crime against the person. So if you look at that language in conjunction with what was said about the possible fear that this deputy experienced, it could have been you look like you have a question. You know, my biggest problem with your argument here is, I mean, I'm looking at the jury instruction. I have it in front of me. And there's no doubt that juries are apparently routinely, perhaps in every case instructed in California, that fear specifically means immediate injury to someone else present during the incident or to that person's property. So if juries are routinely instructed that way, why isn't that in this kind of a circumstance here the end of the matter? I think there are two reasons why, Your Honor. The first is the jury instructions that were submitted or referenced in the reply brief were not the controlling jury instructions in Mr. Baldwin's case. In 2005, California completed a complete overhaul of their jury instructions. And so they used to use what was called the Cal JIC, and now they use the Cal CRIM. So we saw in the reply brief the Cal CRIM. Mr. Baldwin was convicted in 1994 or 95, I believe, right after this statute was enacted. That is when Cal CRIM still applied, specifically Cal CRIM 9.46 for carjacking. There was no equivalent instruction regarding fear. That was not added until the mid-2000s when California switched over and overhauled completely its jury instructions. So the current instruction that I just read from your view is that or you think the evidence is that that was not the instruction that was given at the time of the defendant's conviction? I believe so because it simply did not exist. And if you go back and look at the 1994 version of Cal JIC 9.46 for carjacking back in contemporaneous with Mr. Baldwin's conviction, it was actually the first instruction for carjacking because the statute was brand new back then. But it did not contain that fear definition that goes along with the current carjacking instruction. Does the current carjacking instruction relate to the exact same statute? Yes. So the statute hasn't changed. The statute has not changed. And the current instruction tells the juries with regard to the same statute that fear of property is enough, fear of injury to property is enough. The model statute contains it. That portion of it is optional. There are occasions of cases where they don't instruct on fear to property. But I do have a second point to your question about why the jury instruction itself does not show that this is how California prosecutes these cases. And if you think about when this court considered Nevada's definition for a deadly weapon, Nevada defined it three different ways. Two of them were very analogous to the common law, and one was cross-references to a lot of other different Nevada statutes. And one of the ways Nevada, through that cross-reference, defines deadly weapon is if you use any device that could be used to mark a person with paint or another device or, excuse me, another substance. And so read literally, that could be something like a can of spray paint that you spray someone with or a Sharpie or something like that, that Nevada literally, technically speaking, could be swept into deadly weapon. But as a practical matter, as a realistic probability, this court held that no Nevada case had ever gone and applied that technical definition. It was more about something that was in fact a deadly weapon or something that was used as a deadly weapon. And so we would analogize to that in this carjacking scenario because although the carjacking statute is very closely related to the robbery statute from which it derived, and that's where that fear definition comes from, it's an optional part of the instructions to read to the jury. But if you look at how California charges and prosecutes carjacking, there's no such realistic case where somebody was actually prosecuted for saying, I have the keys to your Ferrari and I'm going to bang it up right now if you don't give me your car. So I think while it could be a theoretical possibility under that language, similar to how this court said, look, just because Nevada might consider a can of spray paint somehow a deadly weapon, that's not how it's prosecuted in fact. And so the court said that it wasn't going to basically make up something that wasn't really the way that a state prosecutes. But going to the question that Judge Pearsall asked, you agreed that if that, under those facts, someone likely could be prosecuted under this statute, give me your Ferrari or I'm going to destroy it. That threat fits within the language of the statute. I don't think it would be likely because we don't see a single California case where anyone has ever been prosecuted for a threat to property like that. And so going back to Duenas-Alvarez, it's not a theoretical possibility. It's a realistic probability. We don't have that realistic probability here because we don't have a single case. And we would argue that that does not meet the standard under Duenas-Alvarez. I'll briefly address the firearm and the storage unit. The other firearm that was in part of the undercover drug sale was not disputed by Mr. Baldwin at sentencing. So there was no reason for the government to prove anything up with regard to that. And so the government spent its efforts at sentencing to prove up the storage unit firearm. And I think that's why you see the district court's comments at page 69 of the record saying that was the firearm we heard about today. That was the only one that was really disputed at sentencing. Did the court make a specific finding anywhere at sentencing that the defendant actually or constructively possessed the firearm in the storage unit? I think at page 69 he's saying that. But I also believe because the court fully adopted the PSR, paragraph 25 of the PSR references both firearms, and the court adopted that finding. So I think you have it in a couple of different places. Well, I'm looking at paragraph 25. Does paragraph 25 say that the defendant possessed the firearm in the storage unit? I see that it says he possessed it during the drug transaction. But I don't see that it specifically says that the defendant possessed the firearm in the storage unit as opposed to saying that it's his storage unit. That's correct. Because the enhancement in the guidelines is not that he possessed it. It just has to be in connection with the drug offense. And so in connection with could be, in this case, he constructively possessed it inside of a storage unit that contained only a single box. Inside the box there were two bags. One of the duffel bags contained Baldwin's drugs, for which he pleaded guilty in Count 7, as well as this firearm. So they were together in the same bag. It is a low burden for that particular enhancement. And given that there were two separate firearms in this case, either of which the court could have relied on and one of which Mr. Baldwin did not even challenge, we would submit that it meets that burden. Unless the court has any other questions on the carjacking issues or the enhancements, we would submit on our brief. Thank you. Thank you. Thank you. I will pick up where we left off talking about the firearms. So in response to your earlier questions about the factual basis on who had possession of the firearms, I would point the court to page 145 of the excerpts of record, which is the factual basis set forth in the plea agreement. At the last paragraph it notes in the plea agreement that that storage unit was rented to Angelique Baker. That's on line 22, excerpts of record 145. And continuing on to page 146, it states that the canine was deployed on the row of units, including the one rented to Angelique Baker. Right. But it still says it's his storage unit. Correct, Your Honor. But if multiple people had access to the firearm, when you're – let me back up. When you're talking about constructive possession, you're talking about dominion and control. So he didn't have actual possession of the firearm. So then the question, did he have dominion and control over the firearm and the storage unit? If another person had access to that storage unit, it's possible that the firearm belonged to that other person. And I believe that factual scenario is very similar to Kelso, where a gun was found in a car but two individuals were also in the car. You might have actually said this too, but do you agree with your colleague that the judge did make a specific finding that the gun in the storage unit was possessed by your client? It was implied finding, I believe. So the judge certainly relied upon that conclusion. But you're saying there was insufficient basis for that finding? There was an insufficient basis because we know, as I hate to repeat myself, but when you have two people that have access to a gun, one person doesn't have physical possession of the gun, the question always arises, well, which person actually possessed the gun? And we don't know if Mr. Baldwin owned the gun. We don't know when the gun was obtained. We don't know if the gun was even in the storage unit. At the time, Mr. Baldwin was observed entering the storage unit. That was January 3rd, I believe, and the gun wasn't found until January 17th. So it's entirely possible that the person who rented the storage unit may have gone in there and stored her own gun in there. So I believe that this Court's decisions in Highsmith, Cesaris, and Kelso are controlling. And if there are no further questions, I would ask the Court to reverse the conviction. Thank you, counsel. Thank you. The case just argued will be submitted, and the last case on our argument calendar is Rezavi v. Seale.
judges: Bennett, Lee, Piersol